**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **ALEXANDRIA RICHARDSON,** | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | **Civil Case No. 1:21-cv-00669** |
| | * | |
| **UNIVERSITY OF MARYLAND SHORE** | * | |
| **REGIONAL HEALTH, INC.,** | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Alexandria Richardson sued University of Maryland Shore Regional Health, Inc. ("Defendant" or "Shore Health") after she was terminated from her employment as a histotechnician in Shore Health's Easton Pathology Department.  Ms. Richardson claims that Shore Health violated her rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII"), and her rights under the Family Medical Leave Act, 29 U.S.C. §§ 2601 *et seq.* ("FMLA").  Discovery is now complete, and Shore Health has filed a motion for summary judgment (the "Motion") that is now fully briefed.  ECF 17, 23, 28.  The Court has reviewed the Motion, Ms. Richardson's opposition, and Shore Health's reply, along with the accompanying exhibits.  No hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2021).  For the reasons that follow, Shore Health's Motion will be granted in part and denied in part.

### I.      FACTUAL BACKGROUND

The following facts are construed, as they must be, in the light most favorable to the non-movant, Ms. Richardson.

On December 11, 2017, Ms. Richardson, a Black woman, began working as a histotechnician at Shore Health's Easton Pathology Department.  ECF 23-3 at 65 (Richardson Deposition).  A histotechnician prepares tissue samples for analysis, which involves the use of toxic chemicals.  ECF 17-6 (Job Description).  At all relevant times, Bonnie Niebuhr, a White woman, supervised Ms. Richardson.  ECF 1 ¶ 7.

On February 22, 2018, Ms. Richardson notified Ms. Niebuhr she was pregnant.  ECF 23-3 at 86.  Because Ms. Richardson was pregnant, her doctor advised her to avoid any contact with toxic chemicals and provided her with a note explaining that advice.  ECF 23-5 (April 5, 2018 Doctor's Note).  Ms. Richardson gave that note to Ms. Niebuhr.  ECF 23-3 at 93.

According to Ms. Richardson, she overheard Ms. Niebuhr talking with Ms. Richardson's co-workers about whether it was, in fact, necessary that Ms. Richardson refrain from using absolute alcohol during her pregnancy.  *Id.* at 97-98.  During Ms. Richardson's second trimester, Ms. Niebuhr asked her to obtain a second doctor's note to determine whether the same restrictions were necessary.  *Id.* at 101-02.  Ms. Richardson obtained a second doctors note verifying that she should not use toxic chemicals, with or without gloves, and that she could not lift anything over 30 pounds.  ECF 23-7 (June 8, 2018 Doctor's Note).  During the last months of her pregnancy, Ms. Richardson contends that Ms. Niebuhr  began counting the number of times Ms. Richardson would go to the restroom and that she asked Ms. Richardson's co-workers to do the same.  ECF 23-3 at 117-18.  According to Ms. Richardson, one of her White co-workers, Courtney McQuay, told Ms. Richardson that she was not subject to similar scrutiny during her pregnancy approximately two years before Ms. Richardson began working at Shore Health.  *Id.* at 122.

In response to the way she was being treated by Ms. Niebuhr, Ms. Richardson complained to Melinda Simpkins who worked in Shore Health's Human Resources Department.  *Id.* at 113,

116-28.   Although Ms. Simpkins assured Ms. Richardson that Ms. Niebuhr "isn't racist," she apparently took no further action.  *Id.* at 122.

On October 24, 2018, Ms. Richardson gave birth to a baby girl.  *Id.* 108.  On January 4, 2019, Ms. Richardson's daughter was diagnosed with Gastro-esophageal reflux disease without esophagitis ("GERD") and milk and/or soy protein intolerance/allergy.  *See id.* at 183.  This condition caused Ms. Richardson's daughter to suffer symptoms that required frequent medical attention.  *Id.* at 201-02.

On January 7, 2019, Ms. Richardson returned to work.  *Id.* at 112.  Between January 14, 2019 and September 23, 2019, Ms. Richardson was late to work approximately 23 times.  ECF 17-1 at 25-26.  While Ms. Richardson acknowledges that several of these instances of lateness were unrelated to her daughter's illness (*see, e.g.*, ECF 23-3 at 178 discussing her lateness after being pulled over), several were because her daughter was sick.  *See, e.g.*, ECF 23-8-9 (Text Messages from Ms. Richardson).  According to Ms. Richardson, she openly discussed her daughter's chronic illness among her co-workers.  ECF 23-3 at 183 (testifying that she disclosed that her daughter had GERD to "[p]retty much everybody in the lab in casual conversation.").[1]

Shore Health's Master Attendance policy establishes a progressive system of corrective action that allows employees to accrue seven "occurrences" before they are terminated.  ECF 23-10 at 4 (Shore Health Master Attendance Policy).  Under the Policy, "[e]xcessive unscheduled absence, lateness or early departure will result in corrective action[.]"  *Id.*  The Laboratory Time and Attendance policy defines "occurrence" as "any incident or pattern of unscheduled absence,

---

[1] Although neither party provides the relevant page of testimony, Plaintiff also states that Ms. Niebuhr testified that "half of the time [Ms. Richardson was late or absent she] would say her daughter would be sick."  ECF 23-1 at 23 (citing Niebuhr Deposition at 39).

lateness or early departure." ECF 23-11 at 1 (Laboratory Time and Attendance Policy).  However, FMLA-related lateness is exempt from the corrective action program.  ECF 23-10. at 5.

On March 1, 2019, after Ms. Richardson had been late to work on five occasions, she received her first occurrence.  ECF 23-12 (Pre-Disciplinary Counseling Report, March 1, 2019); ECF 23-13 (Ms. Richardson's Time and Attendance Records).

On March 14, 2019, Ms. Niebuhr gave Ms. Richardson a positive performance evaluation. ECF 23-14 (Performance Evaluation, March 14, 2019).  On March 15, 2019, Ms. Niebuhr gave Ms. Richardson a verbal warning after she allegedly left work without clocking out to get coffee. ECF 23-3 at 144-45.  Ms. Richardson argues that her colleague Matthew Kerr—a supervising histotechnologist who is White—also left work to get coffee while on the clock but was not disciplined by Ms. Niebuhr.  ECF 23-6 ¶ 18 (Declaration of Ms. Richardson).

After receiving the warning, Ms. Richardson again complained to Human Resources about Ms. Niebuhr's treatment.  This time, Ms. Richardson spoke with Desiree Monroe, who had replaced Ms. Simpkins.  ECF 23-3 at 148.  According to Ms. Richardson, she reiterated her belief that Ms. Niebuhr was treating her worse than her White co-workers.  ECF 23-6 ¶ 19.  Ms. Richardson also told Ms. Monroe that she had been arriving late to work because her daughter had a chronic illness.  ECF 23-3 at 239.  After her conversation with Ms. Monroe, Ms. Richardson submitted a written statement at Ms. Monroe's request recounting the coffee incident and other alleged harassment by Ms. Niebuhr during her pregnancy and while she was on maternity leave. ECF 23-15 (March 28, 2019 Statement).

After Ms. Richardson was late to work on April 25, 2019, she was issued a second occurrence.  ECF 23-16 (Corrective Action Form, April 30, 2019).  According to Ms. Richardson, she had been late to work several times, and absent on several days, between her first and second

occurrences because her daughter was hospitalized for pneumonia.  ECF 23-8 (Text Messages from Ms. Richardson to Ms. Niebuhr).

Ms. Richardson again complained to Ms. Monroe about Ms. Niebuhr's conduct after two incidents in June, 2019.  On June 6, 2019, Ms. Niebuhr allegedly grabbed Ms. Richardson's shirt and reprimanded her that it was in violation of the dress code policy.  ECF 23-3 at 155.  The following day, Ms. Niebuhr allegedly reprimanded Ms. Richardson in front of co-workers for her alleged failure to do certain work-related tasks (Ms. Richardson claims she had valid reasons for not performing these tasks).  *Id.* at 152; ECF 23-17 (June, 2019 Statement).

Shortly after this complaint, Ms. Richardson received three occurrences in the span of three weeks.  Ms. Richardson was late once (by one minute) between her second and third occurrences.  ECF 23-13 at 377.  Ms. Richardson was not late between her third and fourth occurrences (on which she was late by 17 and 12 minutes respectively), and she was late once (by eight minutes) between her fourth and fifth occurrences.  ECF 23-1 at 15.

On Ms. Richardson's fifth occurrence, after she was late to work because she was pulled over for speeding, she was issued a Final Warning.  ECF 23-19 (Corrective Action Form, July 8, 2019).[2]  After the Final Warning was issued, Ms. Richardson met with Margaret Pulleyn, who was Shore Health's lab manager.  ECF 23-3 at 176-77.  After discussing why Ms. Richardson was having difficulty getting to work on time, Ms. Pulleyn suggested that Ms. Richardson speak to Human Resources about intermittent FMLA leave.  *Id.*; ECF 23-19.

---

[2] Shortly after this Final Warning, Ms. Niebuhr was placed on a performance improvement plan. ECF 23-22 (Performance Improvement Plan).  Shore Health claims that Ms. Niebuhr was removed from making disciplinary decisions about Ms. Richardson, ECF 28 at 11 (citing ECF 19 at 45-46 (Niebuhr Deposition)), though the record seems to reflect otherwise.  *See, e.g.*, ECF 23-25 (Email chain between Ms. Niebuhr, Ms. Hospodor, Ms. Pulleyn, Ms. Monroe, and Kelley Mills, August 30, 2019).  Ms. Niebuhr attributed the performance improvement plan to Ms. Richardson's complaints about her.  ECF 23-4 at 11-14.

On July 31, 2019, Ms. Richardson applied for, and was granted, intermittent FMLA leave. ECF 23-20. Shore Health's corporate designee, Barbara Hendricks, testified that once an employee qualifies for FMLA leave, it generally works with the employee and its third-party leave administrator to review the employee's disciplinary history, determine whether any prior occurrences were for an FMLA-covered reason, and, if so, eliminate those occurrences. ECF 23-21 at 28-30 (Shore Health 30(b)(6) Deposition). With one exception noted below, the record here suggests Shore Health did not do that with respect to Ms. Richardson.

On August 2, 2019, Ms. Richardson was 34 minutes late to work and received her sixth occurrence. ECF 23-26 (Corrective Action Form, August 6, 2019). On that day, she was late because she forgot her badge and had to turn around on her way to work to retrieve it. ECF 17-4 at 205 (Richardson Deposition); ECF 17-36 (Text Messages from Ms. Richardson to Ms. Niebuhr). Ms. Richardson appealed this occurrence, but the appeal was denied. ECF 17-40 at 45-46 (Deposition of Ms. Hendricks); ECF 17-41 (Email from Ms. Hendricks to Ms. Richardson, August 13, 2019).

As part of Ms. Richardson's appeal, she requested a department transfer from Shore Health's Pathology Department to the Microbiology Department, which had an open position. ECF 17-41. However, Ms. Hendricks informed Ms. Richardson that her transfer request was denied because Shore Health policy prohibits a departmental transfer of an employee who has a "Final Written Warning issued in the past 12 months." *Id.*

On August 6, 2019, Ms. Pulleyn and Ms. Monroe met with Ms. Richardson to tell her that she was terminated for exceeding the number of occurrences under the attendance policies. ECF 17-37 ¶ 7 (Declaration of Ms. Pulleyn). After Ms. Richardson explained that her July 16, 2019

absence should have been covered by her FMLA leave, Ms. Monroe and Ms. Pulleyn agreed to remove that occurrence.  ECF 17-4 at 204.

On August 13, 2019 and August 15, 2019, Ms. Richardson used her FMLA leave to take the day off because her daughter was sick.  ECF 23-23 (Email from Ms. Niebuhr to Ms. Monroe, August 13, 2019); ECF 23-24 (Email from Ms. Niebuhr to Julie Hospodor, August 16, 2019). After the August 13th absence, Ms. Niebuhr emailed Ms. Monroe complaining about the adequacy of Ms. Richardson's notice and accusing her of "playing a game and trying to set me up to be the fall guy."  ECF 23-23.  Similarly, on August 16th, Ms. Niebuhr emailed Ms. Hospodor and Ms. Pulleyn, copying Ms. Monroe.  ECF 23-24.  The email stated that Ms. Richardson had violated Shore Health's policies by waiting too long (until "33 minutes after shift start") to notify Shore Health that she was going to be absent from work.  *Id.*

At some point on or around August 30, 2019, Ms. Richardson again called out from work for what appears to be an FMLA-related reason.  ECF 23-25 (Email chain between Ms. Niebuhr, Ms. Hospodor, Ms. Pulleyn, Ms. Monroe, and Kelley Mills, August 30, 2019).  Shore Health supervisors and administrators determined that Ms. Richardson needed recertification from Lincoln Financial.  *Id.*  They also discussed terminating her and recommended that Ms. Niebuhr tell Ms. Richardson that she could not return to work unless she received recertification from Lincoln Financial approving her leave.  *Id.*

On September 19, 2019, Ms. Richardson came to work but felt like she had the flu.  ECF 23-3 at 218.  She explained to Mr. Kerr that she had been to urgent care the day before.  *Id.* According to Ms. Richardson, the urgent care doctor had prescribed medication and directed Ms. Richardson to stay home from work until September 20th.  ECF 23-6 ¶ 23.  Mr. Kerr encouraged her to leave work, but she explained that she did not have any leave time available and that she

would stay at work but wear a mask.  ECF 23-3 at 218.  Because she felt ill, though, she left early that day but was not disciplined.  *Id.*  On Friday, September 20th, Ms. Richardson was still feeling sick, so she went back to the doctor and was diagnosed with the flu.  *Id.* at 221.  She received a doctor's note that advised her to stay home from work until Tuesday, September 24, 2019.  *Id.* at 220.  Accordingly, Ms. Richardson was absent from work on Monday, September 23rd.  ECF 23-3 at 219.  Because she did not have any available leave to use for her absence on September 23rd, Shore Health counted the absence as her seventh occurrence, and she was terminated when she returned to work on September 24, 2019.  ECF 23-27 (Termination Form, September 24, 2019).

## II.    LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden of showing that there is no genuine dispute of material facts.  *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)).  If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show a genuine issue exists for trial.  *Id.*  The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial."  *Id.* at 349 (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993)).  The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor.  *Id.* at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).  Moreover, a genuine issue of material fact

cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Additionally, summary judgment shall be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348-49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Id.* at 352 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010) (unpublished)). In ruling on a motion for summary judgment, a court must view all of the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III. ANALYSIS

#### a. Evidentiary Arguments

At the outset, the Court must address Shore Health's argument that this Court should either disregard or strike certain paragraphs of the declaration Ms. Richardson submits in support of her opposition to Shore Health's motion. Shore Health relies on the "sham affidavit" doctrine which stands for the proposition that "a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999) (collecting cases).

9

It is axiomatic that courts should not make credibility determinations when adjudicating a motion for summary judgment. *See Liberty Lobby*, 477 U.S. at 255. Accordingly, when applying the sham affidavit rule at the summary judgment stage, courts should only strike a party's statements when "the inconsistency between a party's deposition testimony and subsequent affidavit [is] clear and unambiguous." *Van Asdale v. International Game Technology*, 577 F.3d 989, 998-99 (9th Cir. 2009). As the Ninth Circuit has explained, "the non-moving party is not precluded from elaborating upon, explaining or clarifying prior testimony elicited by opposing counsel on deposition [and] minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence[.]" *Id.* (quoting *Messick v. Horizon Indus.*, 62 F.3d 1227, 1231 (9th Cir. 1995)) (alteration in original).

This Court has only relied on Ms. Richardson's declaration for a few discrete propositions. This Court cites to paragraphs 18 and 19 of the declaration, both of which relate to her racial discrimination and retaliation claims. As explained below, whether or not these statements are admissible (under the sham affidavit rule or other evidentiary restrictions like hearsay), the Court will grant Shore Health's motion for summary judgment with respect to Ms. Richardson's Title VII racial discrimination and retaliation claims.

This Court also cites to paragraph 23 of the declaration, which discusses Ms. Richardson's urgent care visits, and ultimate flu diagnosis, in September, 2019. Aside from arguing that Ms. Richardson's flu was not an FMLA-eligible condition,[3] Shore Health does not appear to challenge the veracity or potential admissibility of this paragraph.

---

[3] Shore Health appears correct on this point since there is no evidence Ms. Richardson suffered any complications related to her case of the flu. 29 C.F.R. 825.113(d) (barring complications, the flu is not a "serious health condition" for purposes of the FMLA); *Mackie v. Jewish Foundation for Group Homes*, No. DKC-10-0952, 2011 WL 1770043, at *5 (D. Md. May 9, 2011).

Among other challenges to the declaration (to be addressed, if necessary, at a later date), Shore Health argues that Ms. Richardson's statements about how and when she informed her colleagues of her daughter's chronic illness conflict with her deposition testimony.  ECF 28 at 4. While this opinion does not explicitly rely on those portions of Ms. Richardson's declaration, they are important enough that this Court must explain why they should not be struck or ignored, as Shore Health requests.

Shore Health argues that Ms. Richardson's declaration conflicts with her deposition testimony insofar as it states that she: told Ms. Niebuhr of her daughter's chronic illness; obtained and provided Ms. Niebuhr with a note from her daughter's pediatrician, which Ms. Niebuhr allegedly accused her of falsifying; and told Ms. Monroe she was missing time from work because her newborn was chronically ill.  ECF 28 at 3.  According to Shore Health, these statements should be struck because Ms. Richardson testified in her deposition that the first time she told Shore Health that her daughter had GERD was on July 11, 2019, during her meeting with Ms. Monroe and Ms. Pulleyn.  ECF 28 at 4.

First, that is a mischaracterization of Ms. Richardson's testimony.  Shore Health relies on the following exchange:

> Q: Again, prior to that you hadn't disclosed GERD to anyone, correct?
> A: *Incorrect.*
> Q: Okay.  To whom had you disclosed that?
> A: Pretty much everybody in the lab in casual conversation.
> Q: With regard to your absenteeism or lateness you never said I need to be late because my daughter had GERD?
> A: *Not ahead of time, no.*

ECF 23-3 at 183 (emphasis added).  This exchange stands for the proposition that Ms. Richardson did not specifically cite GERD as the reason she was going to be late or absent on any particular

day, but it does not necessarily follow from that answer, as Shore Health suggests, that July 11, 2019 was the first time she told anyone of her daughter's GERD diagnosis.

Second, even if Shore Health is correct that July 11, 2019 was the first time Ms. Richardson specifically informed any of her colleagues that her daughter had been diagnosed with GERD, Ms. Richardson's statements that she informed her colleagues of her daughter's chronic illness prior to that date are not inconsistent. Informing colleagues of her daughter's chronic illness and informing them that her daughter was specifically diagnosed with GERD are two different things.

Accordingly, while Shore Health is free to raise any valid evidentiary objections to Ms. Richardson's declaration as this case progresses, this Court declines to apply the sham affidavit doctrine, because it has not relied on any statements in Ms. Richardson's declaration that flatly contradict her deposition testimony.

### b.   Title VII Claims (Counts I and II)[4]

#### i.   Racial Discrimination Under Title VII

As Ms. Richardson appears to concede, she presents no direct evidence of racial discrimination. Therefore, to prove her racial discrimination claims she must proceed under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To survive Shore Health's motion for summary judgment, she must demonstrate a *prima facie* case of discriminatory termination by showing that: "(1) [s]he was a member of a

---

[4] Shore Health argues for summary judgment to the extent Ms. Richardson has brought harassment or hostile work environment claims. ECF 17-1 at 29-32. While the Complaint vaguely uses the words harassment and hostile work environment, it does not appear to bring either of those claims. And even if the Complaint could be construed otherwise, Ms. Richardson abandoned any such claims by failing to defend them in her opposition brief. *Crosby v. City of Gastonia*, 635 F.3d 634, 638 n.3 (4th Cir. 2011) ("[A]llegations neither argued nor briefed at [the] summary judgment stage [are] deemed abandoned[.]") (citing *Forrest Drive Assocs. v. Wal-Mart Stores, Inc.*, 72 F. Supp. 2d 576, 586 n.5 (M.D.N.C. 1999)).

protected class; (2) [s]he was satisfactorily performing [her] job at the time of the termination; (3) [s]he was terminated from [her] employment; and (4) the prohibited conduct in which [s]he engaged was comparable in seriousness to misconduct of other employees outside the protected class who received less severe discipline." *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223 (4th Cir. 2019). If Ms. Richardson demonstrates a prima facie case, the burden shifts to Shore Health to articulate a legitimate, non-discriminatory, reason for her termination. *Id.* If Shore Health meets that burden of production, then the burden shifts back to Ms. Richardson to demonstrate that Shore Health's proffered reason is pretextual. *Id.*

Shore Health argues that Ms. Richardson cannot demonstrate a prima facie case because she was not satisfactorily performing her job due to her attendance issues, and because she has not presented any evidence that similarly situated employees received more favorable treatment. ECF 17-1 at 28. Without citing any evidence, Ms. Richardson responds that, "[t]o the extent Ms. Richardson had any absences or lateness they were, for the most [part], attributed to Ms. Richardson caring for her newborn with a serious health condition and, therefore, were not properly the basis for imposing discipline. Otherwise, by Shore Health's own admission, Ms. Richardson was performing her job duties satisfactorily." *Id.* at 34.

First, as Ms. Richardson admits, she was at times late to work for reasons that did not relate to her daughter's care. *See, e.g.*, ECF 23-19 (showing that Ms. Richardson was late to work after she was pulled over for speeding). Second, the fact that she received a satisfactory performance evaluation in March, 2019—six months before she was terminated—is not evidence that can support her assertion that she was meeting Shore Health's expectations "*at the time of the termination*." *Haynes*, 922 F.3d at 223 (emphasis added).

Regardless, even if Ms. Richardson could demonstrate a prima facie case on her discrimination claim, she does not even argue, let alone provide any evidence, that Shore Health's lateness and attendance-based justification for Ms. Richardson's termination was pretext for racial animus.  As will be discussed below, Ms. Richardson may ultimately prove that Shore Health violated her rights under the FMLA, but even if she is correct, she has no evidence that she was disciplined or terminated because of her race.  Nor does she have any evidence that Shore Health "denied [her] FMLA qualifying leave" on account of her race.  ECF 23-1 at 34.  Even if Ms. Richardson could prove that she was treated differently than Ms. McQuay (during her pregnancy) or Mr. Kerr (in response to the coffee incident)—both of whom are White—the intervening six months of attendance problems demonstrate that Ms. Richardson was (rightly or wrongly) fired because of those problems, not because of her race.[5]  Ms. Richardson has not alleged or established that any White employee with similar attendance issues retained employment with Shore Health.

### ii.  Retaliation Under Title VII

Ms. Richardson's Title VII retaliation claim meets a similar fate.  To state a prima facie case for retaliation under Title VII, a plaintiff must show: "(1) that [s]he engaged in a protected activity; (2) . . . [her employer] acted adversely against [her]; and (3) the protected activity was causally connected to the adverse action."  *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007).

Ms. Richardson argues she engaged in protected activity by complaining to Shore Health that Ms. Niebuhr was treating her in a way she perceived to be racially discriminatory.  ECF 23-1

---

[5] Again, Ms. Richardson's argument that these attendance problems may be the result of Shore Health's FMLA violations might support an FMLA claim, but it brings her no closer to showing that she was disciplined or terminated because of racial discrimination.

14

at 32.  She argues that Ms. Niebuhr and Shore Health retaliated against her for that protected activity by issuing her three occurrences within a three-week span shortly after she reported the allegedly discriminatory conduct.  *Id.* at 33.  Ms. Richardson also argues that Shore Health's lateness-related justification for the occurrences "cannot stand because it violates not only Title VII, but also the FMLA."  *Id.*

Again, though, even assuming Ms. Richardson has demonstrated a prima facie case,[6] she cannot show that Shore Health's legitimate, non-discriminatory, reasons are pretext for retaliation in response to her report of racial discrimination.  In this sense Ms. Richardson confuses her burden.  To survive summary judgment on a Title VII retaliation claim, it is insufficient for Ms. Richardson to show that Shore Health's "legitimate" reasons for terminating her constitute violations of the FMLA; instead, she must show that Shore Health's lateness-related reason is pretext for Shore Health's motivation to retaliate against her for reporting Ms. Niebuhr's allegedly discriminatory conduct.

Ms. Richardson cannot meet that burden.  She does not contest her lateness on any of the days she received the three occurrences shortly after her complaints to Shore Health.  ECF 23-1 at 15.  These occurrences may have been unfair, they may have violated Shore Health's attendance

---

[6] This is far from clear.  With respect to the causation prong of a Title VII retaliation claim, "'[t]emporal proximity between the protected activity and the adverse action is a significant factor in considering a circumstantial showing of causation,' and 'the causal connection may be severed by the passage of a significant amount of time, or by some legitimate intervening event[.]'" *Feldman v. Law Enforcement Associates Corp.*, 752 F.3d 339, 348 (4th Cir. 2014) (first quoting *Tice v. Bristol-Myers Squibb Co.*, 2006-SOX-20, 2006 WL 3246825, at \*20 (Dep't of Labor Apr. 26, 2006) (internal citations omitted) then quoting *Halloum v. Intel Corp.*, ALJ No. 2003-SOX-7, 2004 WL 5032613, at \*4-5 (Dep't of Labor Mar. 4, 2004)).  The three allegedly retaliatory occurrences were issued within three weeks of Ms. Richardson's report of Ms. Niebuhr's discriminatory conduct, and, therefore, they were arguably temporally proximate to the protected activity.  But Ms. Richardson was late six times during that period.  These instances of lateness are legitimate, non-retaliatory, intervening events that sever the causal connection between the protected activity and the alleged retaliation.  *Id.*

policies, and they may have even violated the FMLA.  None of that, however, means that Shore Health retaliated against Ms. Richardson because she complained about Ms. Niebuhr's allegedly discriminatory treatment.  In the absence of any evidence that could support an inference that Ms. Richardson's complaints of discrimination—rather than her admitted instances of lateness—was the real reason she received the three allegedly retaliatory occurrences, this Court must grant summary judgment in Shore Health's favor on Ms. Richardson's Title VII retaliation claim.

### c.  FMLA Claims (Count III)

"The FMLA is intended 'to balance the demands of the workplace with the needs of employees to take leave for eligible medical conditions and compelling family reasons.'"  *Rhoads v. F.D.I.C.*, 257 F.3d 373, 381 (4th Cir. 2001) (quoting *Hukill v. Auto Care, Inc.*, 192 F.3d 437, 441 (4th Cir. 1999)).  Under the FMLA, an "eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [i]n order to care for . . . a son, daughter, or parent, of the employee, if such . . . son, daughter, or parent has a serious health condition."  29 U.S.C. § 2612(a)(1)(C).  Subject to certain requirements, such leave may be taken intermittently. 29 U.S.C. § 2612(b)(1).

The FMLA creates two types of claims: "(1) 'interference,' in which the employee alleges that an employer denied or interfered with her substantive rights under the FMLA, and (2) 'retaliation,' in which the employee alleges that the employer discriminated against her for exercising her FMLA rights."  *Edusei v. Adventist Healthcare, Inc.*, DKC-13-0157, 2014 WL 3345051, at *5 (D. Md. July 7, 2014) (quoting *Dotson v. Pfizer, Inc.*, 558 F.3d 284, 294-95 (4th Cir. 2009)).  An interference claim "'merely requires proof that the employer denied the employee his entitlements under the FMLA[.]'"  *Bosse v. Baltimore City*, 692 F. Supp. 2d 574, 588 (D. Md. 2010) (quoting *Stallings v. Hussmann Corp.*, 447 F.3d 1041, 1051 (8th Cir. 2006)).  However, a

retaliation claim requires "'proof of retaliatory intent.'"  *Id.* at 588 (quoting *Stallings*, 447 F.3d at 1051); *see also Edusei*, 2014 WL 3345051, at *6.

Ms. Richardson argues that Shore Health both interfered with her rights under the FMLA and retaliated against her for asserting those rights. ECF 1 ¶¶ 60-65.

### i.  Interference

"To establish unlawful interference with an entitlement to FMLA benefits," a plaintiff must establish that "(1) she was an eligible employee; (2) her employer was a covered employer; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; (5) the employer denied her FMLA benefits to which she was entitled; and (6) the violation prejudiced her in some way."  First quoting *Sherif v. Univ. of Md. Med. Ctr.*, 127 F. Supp. 3d 470, 477 (D. Md. 2015) then quoting *Smith v. Caesars Baltimore Mgmt. Co., L.L.C.*, No. ELH-17-3014, 2019 WL 3766529, at *11 (D. Md. Aug. 9, 2019).

To demonstrate that an employer "denied her FMLA benefits" it is sufficient to show that the employer "interfered with" a plaintiff's FMLA rights by showing that the employer used "'the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions.'"  *Bosse*, 692 F. Supp. 2d at 585 (quoting *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 870 (D. Md. 2000)).  "Harm or prejudice exists when an employee . . . suffers some loss in employment status remediable through appropriate equitable relief."  *Whitt v. R&G Strategic Enterprises, LLC*, No. RDB-16-2492, 2018 WL 398289, at *5 (D. Md. Jan. 11, 2018).  "[A]n employer can avoid liability if it shows the plaintiff's FMLA leave was not a but-for cause of an adverse employment action."  *Sparenberg v. Eagle Alliance*, No. JFM-14-1667, 2015 WL 6122809, at *4 (D. Md. Oct. 15, 2015).

"To request leave, an 'employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave.'"  *Smith*, 2019 WL 3766529, at *11 (quoting 29 C.F.R. §§ 825.302(c), 825.303(b)).  "When an employee seeks leave due to a qualifying reason, for which the employer has previously provided the employee FMLA-protected leave, the employee must specifically reference either the qualifying reason for leave or the need for FMLA leave.  The employer will be expected to obtain any additional required information through informal means."  29 C.F.R. § 825.303(b).  In other words, once the employer has previously provided FMLA-protected leave, "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act."  *Id.*  The employee must also comply with the employer's policy.  29 C.F.R. § 825.303(c); 29 C.F.R. § 825.302(d).

The parties dispute whether Ms. Richardson provided adequate notice of her intention to take FMLA leave on many of the instances she was late to, and absent from, work.  Shore Health argues that Ms. Richardson did not provide sufficient notice because she did not specifically inform Shore Health that her daughter had been diagnosed with a chronic illness, namely GERD.  Notably, however, and contrary to Shore Health's suggestion, Ms. Richardson was not required to specifically cite either the FMLA, or her daughter's specific diagnosis, to adequately inform Shore Health of her need for FMLA leave.  *Smith*, 2019 WL 3766529, at *11-12.

Ms. Richardson has presented evidence that she notified Shore Health that her daughter was chronically ill shortly after returning from maternity leave, and repeatedly thereafter.  For example, Ms. Richardson testified that she openly discussed her daughter's chronic illness among her co-workers, including Ms. Niebuhr.  ECF 23-3 at 183 (testifying that she disclosed that her daughter had GERD to "[p]retty much everybody in the lab in casual conversation.").  She has

18

also presented evidence that, at least on a few occasions, she made it clear to Shore Health that she was going to be late to work because her daughter needed medical attention related to that illness. ECF 23-8-9 (Text Messages from Ms. Richardson).  Shore Health also does not contest Ms. Richardson's assertion that Ms. Niebuhr testified that "half of the time [Ms. Richardson was late or absent she] would say her daughter would be sick."  ECF 23-1 at 23 (citing Niebuhr Deposition at 39).  While that evidence alone does not conclusively establish that Shore Health interfered with Ms. Richardson's rights under the FMLA, it is sufficient to create a factual dispute about whether Ms. Richardson provided sufficient notice of her intent to take FMLA leave.[7]

Shore Health also contends that Ms. Richardson cannot show that she was harmed or prejudiced by its alleged FMLA interference.  ECF 28 at 6-7.  Essentially, it argues that even assuming four of Ms. Richardson's occurrences were removed from her disciplinary record as protected FMLA leave, it still would have had grounds to terminate her.  Shore Health may ultimately be right, but its argument relies on disputed facts and credibility determinations not fit for resolution at this stage.  The mere fact that Shore Health may have had a basis to terminate Ms. Richardson even if it had not allegedly disciplined her for taking protected FMLA leave does not mean that it, therefore, did not interfere with her rights under the FMLA.  In other words, even if Shore Health is correct, a factfinder will ultimately need to decide (among other issues) whether it believes Ms. Richardson—that she was disciplined for taking leave that was, or that should have

---

[7] For the same reasons, Ms. Richardson has presented enough to create a factual dispute that Shore Health "interfered" with her rights under the FMLA.  "[A] reasonable jury could conclude that [Ms. Richardson's attendance issues] were a 'negative factor' in her termination.  And, 'if those [attendance issues] were, in fact, covered by the Act, [Shore Health's] consideration of [them] as a 'negative factor' in the firing decision violated the FMLA.'"  *Smith*, 2019 WL 3766529, at *14 (quoting *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1126 (9th Cir. 2001)).

been, protected—or whether it believes Shore Health that even if Ms. Richardson was entitled to some such leave, she would have been fired anyway.

### ii. Retaliation

To establish a prima facie case of retaliation under the FMLA, a plaintiff must show that: "(1) she 'engaged in protected activity;' (2) 'an adverse employment action was taken against her;' and (3) 'there was a causal link between the protected activity and the adverse employment action.'" *Wright v. Southwest Airlines*, 319 F. App'x 232, 233 (4th Cir. 2009) (quoting *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004)).

Like a Title VII claim, a plaintiff may prove an FMLA retaliation claim through direct evidence, or by relying on the *McDonnell Douglas* burden-shifting framework. "Direct evidence encompasses 'conduct or statements' that both (1) 'reflect directly the alleged discriminatory attitude,' and (2) 'bear directly on the contested employment decision.'" *Laing v. Fed. Exp. Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)).

Ms. Richardson claims she has put forth direct evidence of Shore Health's retaliation. She argues that although Shore Health knew that Ms. Richardson qualified for FMLA leave, it did not give her the benefit of such leave. ECF 23-1 at 31. Moreover, Ms. Richardson argues that once she was approved for FMLA leave, Shore Health "failed to eliminate at least four Occurrences that were FMLA eligible and began discussing Ms. Richardson's termination before Ms. Richardson had been issued her seventh Occurrence." *Id.* Finally, Ms. Richardson argues that the sole reason Shore Health gave for Ms. Richardson's termination was her attendance. *Id.*

Shore Health ignores that evidence and focuses solely on the evidentiary value of the statements in Ms. Richardson's declaration that purport to demonstrate Ms. Niebuhr's discriminatory intent.  ECF 28 at 9.

Whether or not those statements are admissible, Shore Health has never denied that it terminated Ms. Richardson because of her attendance issues.  Therefore, if Ms. Richardson can prove that Shore Health terminated her, or even that it issued occurrences to her, for taking leave that should have been recognized by Shore Health as protected leave under the FMLA, a reasonable jury could find in her favor on her retaliation claim.  Accordingly, Shore Health's motion for summary judgment with respect to Ms. Richardson's retaliation claim will be denied.

## IV.    CONCLUSION

For the reasons set forth above, Shore Health's motion for summary judgment, ECF 17, will be GRANTED as to Counts I and II and DENIED as to Count III.  A separate order follows.

Dated: December 21, 2021                                       _____/s/_____
                                                               Stephanie A. Gallagher
                                                               United States District Judge